Kaley v. Musgrave.

## JOHN L. KALEY

V.

## JOEL L. MUSGRAVE ET AL.

*Negotiable Instruments—Note—Assignment—Commencement of Suit—Evidence.*

1. The plaintiff must have a right of action against the defendant at the commencement of the suit.

2. In an action on a promissory note, wherein the plaintiff claims as assignee of the note, it is *held:* That the presumption that the note was assigned before maturity for a valuable consideration to the plaintiff, was

overcome by the evidence; and that the jury were justified in finding from the evidence that the assignment, if made at all, was not made to the plaintiff until after the commencement of this suit.

[Opinion filed January 4, 1888.]

Appeal from the County Court of Crawford County; the Hon. Joseph B. Crowley, Judge, presiding.

Messrs. Callahan & Jones, for appellant.

Messrs. Robb & Bradberry, for appellees.

Green, P. J. This suit was commenced before a Justice of the Peace, February 22, 1887, in the name of the appellant, claiming as assignee, against appellees as makers, to recover the amount of a promissory note for $40, dated May 7, 1881, payable to the order of John S. Boyd four months after date, with eight per cent. interest. The cause came by appeal to the County Court, where a trial was had resulting in a verdict for defendants, whereupon plaintiff entered a motion for a new trial, which the court overruled and rendered judgment on the verdict against plaintiff for costs. To reverse the judgment plaintiff took this appeal. The defenses interposed were set-off, and that Kaley was not the owner of said note, and the same had not been assigned and delivered to him at the time the suit was brought, and he had not then any cause of action against defendants.

It appears from the evidence that in June or July, 1881, Boyd, the payee of the note, bought a reaper of Jacob Holderman, and in part payment assigned said note in blank and delivered it, so assigned, to Holderman. Two years after, the latter showed Boyd the note and told him Musgrave would not pay it. Soon after that Boyd saw Musgrave, spoke to him about the note, and he said it was paid; that he had worked for Holderman, who still owed him. This conversation Boyd reported, shortly after it occurred, to Holderman, who said he must have cash for the note; that Musgrave owed him on some other matters and he would settle with him in that way for his work. In a short time after this communi-

Kaley v. Musgrave.

cation, Holderman handed Boyd the note, who left it with a Justice for collection and told him he wanted it collected at once, and he, Boyd, afterward learned Holderman took the note away from the Justice, and heard nothing more about the note until the winter of 1886-7, when Holderman asked Boyd to pay the note, saying Musgrave had not yet paid it. Boyd replied he ought to have left the note with the Justice and allowed it to be sued on, and Holderman said the Justice did not understand the case. It further appears the note was signed by J. L. Musgrave, was for a debt of his own, and his wife signed it with him. It was admitted J. L. Musgrave, if present, would testify at the trial that the attorney for plaintiff informed him the suit was brought in the name of Kaley to avoid Musgrave's defense, and Kaley, the plaintiff, testified on behalf of defendants, that he never saw the note sued on until the day of the trial in the County Court; that in the spring of 1887, about March, Mr. Callahan wrote him he had a note on Joel L. Musgrave he would collect, and pay to witness for hay and goods his brother and men on his farms had been getting of witness; that some time afterward Mr. Lowe, who stays in Mr. Callahan's office, asked witness about that note, and witness said "I guess that will be all right," and further testified: "And this is all I know about the matter. I knew nothing about the suit until Joel L. Musgrave came down to my store at New Hebron to see me about it, and told me there had been a suit on the note." And on cross-examination plaintiff testified: "Mr. Callahan has been doing all my legal business for some years." The record discloses these uncontradicted facts: that as late as the winter of 1886-7, Holderman held and claimed to be the legal owner of the note in controversy as the assignee of Boyd. The attorney for plaintiff admitted the suit was brought in the name of Kaley to cut off a defense; that if said note was ever assigned to plaintiff it was not until after the commencement of the suit in February, 1887, because in March of that year Mr. Callahan informed plaintiff he (Callahan) had the note, and the fair import of his letter is that the note was not assigned and he then owned it, inasmuch as he

not only said he had the note on Musgrave, but also proposed
to pay the proceeds, when collected, on his individual liabilities.

Conceding the presumption to be that a note sued on,
offered in evidence at the trial, indorsed by the payee, was
assigned before its maturity, for a valuable consideration, to
the plaintiff in this case, such presumption is overcome by the
proof of the facts mentioned. Holderman was examined as a
witness for plaintiff, and when asked, on cross-examination,
whether he ever sold or transferred the note to Kaley or any
one else, was not permitted to answer, but an objection to the
question as not proper cross-examination was sustained, and
no attempt was made on behalf of plaintiff to show when the
assignment to Kaley was in fact made, but the jury were left
without evidence that shed light on the transaction other than
that furnished by defendants, and were justified in finding
from it, the assignment, if made at all, was not made to
plaintiff until after the commencement of the suit, and hence
he had not at that time a right of action against defendants.
It would be superfluous to cite authorities in support of the
proposition that a plaintiff must have a right of action against
defendants at the time he commences suit, to entitle him to
recover. The verdict of the jury was right, and was sup-
ported by the evidence. In the view we take of the case it is
unnecessary to discuss or pass on the rulings of the court
below objected to by appellant and assigned for error. The
judgment of the County Court is affirmed.

*Judgment affirmed.*